UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN TIRE DISTRIBUTORS, INC., a Delaware corporation,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>AMERICAN TIRE CORPORATION, an unincorporated business with an address in El Monte, California, ABRAHAM HENGYUCIUS, an individual, and DOES 1-10,<br><br>　　　　　Defendants. | CASE NO. CV 08-02971 MMM (JTLx)<br><br>ORDER DENYING DEFENDANTS' MOTION TO SET ASIDE DEFAULT |

　　　　On May 6, 2008, American Tire Distributors ("plaintiff") filed a trademark infringement and unfair competition action against American Tire Corporation ("ATC") and its president, Abraham Hengyucius.[1] The clerk entered ATC's default on July 18, 2008,[2] and entered Hengyucius's default on

---

[1] See Complaint for (1) Federal Trademark Infringement; (2) Federal Unfair Competition; and (3) California and Common Law Unfair Competition ("Complaint"), Docket No. 1 (May 6, 2008).

[2] See Default by Clerk Entered as to Defendant American Tire Corporation, Docket No. 18 (July 18, 2008).

August 20, 2008.[3] Plaintiff then moved for default judgment against both defendants.[4]

On January 14, 2009, defendants moved to set aside their defaults.[5] Plaintiff opposes defendants' motion.[6]

## I. FACTUAL BACKGROUND

Plaintiff has used the trademark "American Tire Distributors" in connection with the tire distribution business since at least January 1971.[7] Plaintiff is the owner of U.S. Trademark Registration Number 3,024,766 for the mark; the registration issued on December 6, 2005, and remains in full force and effect.[8]

Plaintiff currently supplies more than 40,000 customer accounts with tires of all shapes, sizes,

---

[3] See Default by Clerk Entered as to Defendant Abraham Hengyucius, Docket No. 21 (Aug. 20, 2008).

[4] See Amended Notice of Motion and Motion for Default Judgment Against Defendants American Tire Corporation and Abraham Hengyucius, Docket No. 31 (Aug. 22, 2008); Memorandum in Support of Motion, Docket No. 26 (Aug. 20, 2008); Declaration of Lisa Kobialka in Support of Motion, Docket No. 27 (Aug. 20, 2008).

[5] See Notice of Motion and Motion to Set Aside Default ("Defendants' Motion"), Docket No. 45 (Jan. 14, 2009); see also Reply to Opposition to Motion to Set Aside Default and Declarations of Abraham Hengyucius and Maria W. Tam in Support Thereof ("Defendants' Reply"), Docket No. 52 (Feb. 6, 2009).

[6] See Memorandum in Opposition to Motion to Set Aside Default ("Plaintiff's Opp."), Docket No. 48 (Jan. 27, 2009); Declaration of Kathleen McCarthy in Support of Opposition ("McCarthy Decl."), Docket No. 49 (Jan. 27, 2009). McCarthy states that she is counsel for plaintiff. (*Id.*, ¶ 1.) Although she and another lawyer, Clark W. Lackert, filed applications for leave to appear *pro hac vice* (see docket nos. 8 and 9), the court denied these applications (see docket nos. 10 and 11). Consequently, neither McCarthy nor Lackert is presently counsel of record for plaintiff.

[7] Complaint, ¶ 10.

[8] *Id.*, ¶ 11 ("Plaintiff is the owner of U.S. Trademark Registration Number 3,024,766 for the mark American Tire Distributors (Stylized) covering distributorship services in the field of automotive and vehicle tires, wheels, equipment, after-market accessories and replacement parts in Class 42. The registration issued on December 6, 2005 and is in full force and effect"). A copy of the registration certificate is attached to the complaint as Exhibit A.

2

and types – including Off The Road ("OTR") tires – for retail sale by its customers.[9] It uses the "American Tire Distributors" mark to promote its business, selling, *inter alia*, tires, custom wheels, service equipment, and shop supplies to tire dealers, service repair shops, and automotive performance shops.[10]

Plaintiff represents that it has advertised the availability of these products and its services under the "American Tire Distributor" mark to the public at considerable expense, including on the company website[11] and at trade shows.[12] As a result of its efforts, plaintiff maintains that the "American Tire Distributor" mark has come to identify and distinguish its goods and services from those of its competitors and to symbolize the goodwill of its business.[13] Consequently, the mark is of great value to plaintiff.

Plaintiff asserts that it recently became aware of a company named American Tire Corporation because it received email solicitations from the entity.[14] The emails referenced a website that contained sales and promotional information for ATC, and solicited distributors and funding from investors.[15] Plaintiff asserts that the promotional materials on the website touted ATC as a "100% U.S.A.

---

[9]*Id.*, ¶¶ 14, 15. ATD sells a range of "tires, custom wheels, service equipment, [and] shop supplies, and [provides] a full complement of business resources." (*Id.*, ¶ 13.)

[10]*Id.*, ¶ 13.

[11]Plaintiff operates a website promoting the "American Tire Distributors" mark and business at http://www.atd-us.com. Plaintiff also owns the domain name <AmericanTireDistributors.com>, which redirects to the main <atd.us.com> site. (*Id.*, ¶ 12.)

[12]*Id.*, ¶ 16.

[13]*Id.*, ¶ 17.

[14]*Id.*, ¶ 18. The emails contained a P.O. Box address in New Jersey and were signed "Johnson," which plaintiff states is the surname of *its* Chief Executive Officer. (*Id.*)

[15]*Id.*, ¶ 19. The website listed in the ATC emails is alleged to be http://www.abnews.us/atc. Plaintiff also alleges that one or more of defendants subsequently began using a second internet address, http://www.americantire.us, to promote ATC. (*Id.*) Plaintiff also asserts that defendants have created similar entities to solicit funding in other fields, under the names American Business News and American Seashores, and that, although defendants' solicitations suggest these companies are legitimate U.S. corporations, they are in fact not. (*Id.*, ¶ 22.)

3

corporation" marketing "100% U.S.A. brands." It also represented that ATC was a major OTR tire manufacturer.[16] Plaintiff alleges that defendants have disseminated this and other information in press releases, which have been reprinted in tire industry publications.[17]

Plaintiff asserts that, despite research, including review of Secretary of State corporate records in those states where ATC purportedly does business, it has been unable to uncover any evidence that ATC is incorporated or authorized to do business in California, New Jersey or Washington.[18] It also represents that it sent cease and desist letters to defendants, but received no response.[19] Plaintiff asserts that defendants have manufactured or sold few or no tires in the United States,[20] that the information contained in their promotional materials and on their website is false and/or misleading,[21] and that defendants' use of the "American Tire Corporation" mark, if not enjoined, will irreparably injure it.[22] Plaintiff pleads a federal trademark infringement claim under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1),[23] as well as federal,[24] state, and common law unfair competition claims.[25] It seeks injunctive

---

[16]*Id.*, ¶ 20.

[17]*Id.*, ¶ 21.

[18]*Id.*, ¶ 23.

[19]*Id.*, ¶ 33. See also McCarthy Decl., Exh.1 (copy of cease and desist letter sent from plaintiff's prior counsel to ATC, dated September 7, 2006); *id.*, Exh. 2 (copy of cease and desist letter sent from plaintiff's prior counsel to ATC, dated July 6, 2007). In her declaration, McCarthy represents that plaintiff's prior counsel have advised that they were satisfied that defendants received this correspondence, since it was emailed and faxed to Hengyucius and mailed to all three addresses located for ATC (El Monte, California; Chino, California; and Elizabeth, New Jersey). (McCarthy Decl., ¶ 4.)

[20]Complaint, ¶¶ 25-26.

[21]*Id.*, ¶ 28.

[22]*Id.*, ¶ 35.

[23]*Id.*, ¶¶ 36-39.

[24]*Id.*, ¶¶ 40-43.

[25]*Id.*, ¶¶ 44-45.

4

relief, disgorgement, fees and costs.[26]

As grounds for setting aside the defaults that have been entered, defendants argue that neither ATC nor Hengyucius was served prior to the clerk's entry of default.[27]

## II.  DISCUSSION

### A.  Legal Standard Governing Service-Based Challenges to Default

It is axiomatic that a federal court does not have jurisdiction over a defendant if the defendant is not properly served.  See *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988); *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982); see also *Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Investment, Inc.*, 788 F.2d 535, 538 (9th Cir. 1986) ("A federal court obtains personal jurisdiction over a defendant if it is able to serve process on him").  Thus, any default entered following defective service of process must be vacated. See *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84-86 (1988) (a default judgment must be set aside for improper service, whether or not a meritorious defense exists); *Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851 (9th Cir. 1992) ("A person is not bound by a judgment in a litigation to which he or she has not been made a party by service of process. . . .  Hence, if Genisco failed to serve Mason properly in the earlier action, the default judgment is void. . ."); see also, e.g., *Swaim v. Moltan Co.*, 73 F.3d 711, 718 (7th Cir. 1996) (where the party against whom a default judgment has been entered shows that the court lacked personal jurisdiction because of invalid service of process, the court "is obligated to dismiss the case because it has no authority over the defendant.  The default judgment is void").[28]

---

[26]*Id.*, Prayer for Relief.  Plaintiff also seeks an order requiring ATC to amend any state records to delete references to American Tire Corporation as a business name and to cease using American Tire in all business names.  (*Id.*)

[27]Defendants' Motion at 4.

[28]This rule recognizes that service of process is necessary to bring a defendant within the power of the court and to satisfy the requirements of due process by giving notice to defendant of the action pending against him.  See *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988) ("Service of process refers to a formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action").

1    Once service is challenged, plaintiff bears the burden of establishing that it was valid under Rule
2    4 of the Federal Rules of Civil Procedure. *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). "A
3    signed return of service constitutes *prima facie* evidence of valid service 'which can be overcome only
4    by strong and convincing evidence.'" *O'Brien v. R.J. O'Brien & Associates, Inc.*, 998 F.2d 1394, 1398
5    (7th Cir. 1993) (quoting *Hicklin v. Edwards*, 226 F.2d 410, 414 (8th Cir.1955)); 4A Charles A. Wright
6    & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1083 (West 2002) ("[T]he process server's
7    return normally will provide a *prima facie* case as to the facts of service"); cf. *Dill v. Berquist
8    Construction Co.*, 24 Cal.App.4th 1426, 1441 (1994) (holding, under California law, that where the
9    proof of service complies with statutory requirements, "the filing of a proof of service creates a
10   rebuttable presumption that the service was proper"). "Although the return of service of the summons
11   and complaint is strong evidence of the facts stated therein," however, "it is not conclusive and may be
12   controverted upon a showing that the return is inaccurate." 4B Charles A. Wright & Arthur R. Miller,
13   FEDERAL PRACTICE AND PROCEDURE § 1130 (West 2002).

14   **B.    Whether Entry of Default Is Void Due to Invalid Service of Process**

15   Plaintiff contends that it served defendants under to Rules 4(e)(1) and 4(h)(1)(A) of the Federal
16   Rules of Civil Procedure.[29] Rule 4(e)(1) provides that process may be served "pursuant to the law of
17   the state in which the district court is located, or in which service is effected, for the service of a
18   summons upon the defendant in an action brought in the courts of general jurisdiction of the State."
19   FED.R.CIV.PROC. 4(e)(1). Rule 4(h)(1)(A) states that a domestic corporation within a judicial district
20   of the United States may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual."
21   FED.R.CIV.PROC. 4(h)(1)(A).

22   Plaintiff asserts that, in compliance with these rules, they served defendants pursuant to
23   California Code of Civil Procedure § 415.20.[30] Subsection (a) of that statute, which applies to service
24   on corporate defendants, provides, in relevant part, that

25      "[i]n lieu of personal delivery of a copy of the summons and complaint to the person to

---

27   [29]Plaintiff's Opp. at 8.
28   [30]*Id.*

6

be served . . . a summons may be served by leaving a copy of the summons and complaint during usual office hours in his or her office or, if no physical address is known, at his or her usual mailing address, other than a United States Postal Service post office box, with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left. When service is effected by leaving a copy of the summons and complaint at a mailing address, it shall be left with a person at least 18 years of age, who shall be informed of the contents thereof. Service of a summons in this manner is deemed complete on the 10th day after the mailing." CAL. CODE CIV. PROC. § 415.20(a).

Subsection (b) of the statute, which governs service on individual defendants, is substantially identical, but includes a requirement that plaintiff make reasonably diligent efforts to effect personal delivery before resorting to substituted service.[31] CAL. CODE CIV. PROC. § 415.20(b) ("If a copy of the summons and complaint cannot with reasonable diligence be personally delivered . . ."). "Ordinarily, . . . two or three attempts at personal service at a proper place should fully satisfy the requirement of reasonable diligence and allow substituted service to be made." *Espindola v. Nunez*, 199 Cal.App.3d 1389, 1392 (1988) (citation omitted). Under § 415.20(b), the places at which substituted service can be made are an individual defendant's "dwelling house, usual place of abode, usual place of business, or usual mailing address." CAL. CODE CIV. PROC. § 415.20(b).

Plaintiff has submitted extensive documentation regarding its efforts to serve ATC and Hengyucius.[32] It represents that, both before and after initiating suit, it conducted a series of inconclusive investigations as to defendants' location, current address, and corporate status.[33] Plaintiff could not locate corporate records for ATC in either California or New Jersey, and could not identify

---

[31] Section 415.20(b) also does not require that process be served during "usual office hours." CAL. CODE CIV. PROC. § 415.20(b).

[32] See McCarthy Decl. and Exhs. 1-26 attached thereto.

[33] McCarthy Decl., ¶ 5.

7

a personal address, driver's license number, or social security information for Hengyucius.[34] Plaintiff represents that ATC's website listed a Chino, California post office box address and a phone number with a California area code.[35] It hired A&A Legal Service ("A&A") to locate a valid address for and serve defendants.[36] During the course of A&A's investigation, one of its agents filed two U.S. Postal Service ("USPS") "Request for Change of Address or Boxholder Information Needed for Service of Legal Process" forms.[37] The USPS completed and stamped the first form on May 6, 2008, confirming that its records reflected that ATC was receiving mail at 10501 Valley Blvd. #1189, El Monte, CA 91731-0000 ("the El Monte address").[38] Plaintiff therefore served the summons and complaint on ATC

---

[34]*Id.* Plaintiff states that, during its investigation, it "found indicat[ions]" that Hengyucius has "also acted under the names Zhang Hengyu, Hengyu Zhang, and Albert Hy." It does not specify the source or sources of information on which it relies for this statement, however. (*Id.*)

[35]Plaintiff submits a printout of the web page http://www.americantire.us/contact.htm, dated January 27, 2009. (McCarthy Decl., Exh. 18.) The telephone number listed is (626) 698-0002. The address listed is P.O. Box 518, Chino, CA 91708. (*Id.*)

[36]McCarthy Decl., ¶ 7.

[37]McCarthy Decl., Exh 4.

[38]*Id.* Plaintiff discovered this address when, in the course searching for defendants, it located records for a company called American Seashores International, Inc. ("American Seashores") in California and New Jersey. (McCarthy Decl., ¶ 5.) Plaintiff states that "[n]umerous sources, including Internet websites that appear[ ] to be operated by Defendants and owned by the same entity as Defendants' americantire.us website, [show] that American Seashores is also operated by Defendant Hengyucius and is related to Defendant American Tire Corporation." (*Id.*) During its investigation, A&A obtained a variety of documents related to American Seashores. (*Id.*, Exh. 4.) The first two appear to be printouts of corporate records for the company; the source of the documents and how they were obtained is unclear, however. (*Id.*) The documents identify the El Monte address as American Seashores' place of business, and list Abraham Hengyucius as its "registered agent" at P.O. Box 4820, El Monte, CA 91734-0000. The third document, a printout from the California Secretary of State's California Business Portal web page current as of "May 2, 2008," provides the same El Monte address for both American Seashores and its agent for service of process, "Albert Hy." (*Id.*) Additionally, plaintiff located an unrelated Los Angeles Superior Court case in which American Seashores was the defendant, and Hengyucius was identified as its registered agent. (Plaintiff's Opp. at 3; see also McCarthy Decl., ¶ 9; *id.*, Exh. 5 (case summary printout for case number KC052280, *USA Tire Marketing Inc. v. American Seashores International a/k/a American Tire Corporation*).) The case summary shows that American Seashores is in default in the action. (*Id.*) The proof of service on file indicates that the summons, complaint, and ADR packet were served by substitute service at the El Monte address. (*Id.*)

8

1  at the El Monte address on June 11, 2008.[39]  The papers were delivered to a woman who identified
2  herself as "Violet."[40]  They were also mailed to ATC at the El Monte address.   Defendants contend
3  that plaintiff's service of process was ineffective.  They maintain that ATC is incorporated in New
4  Jersey,[41] is not registered in California, and does not have its principal place of business or any office
5  at the El Monte address.[42]  Plaintiff asserts that, under California Code of Civil Procedure § 415.20(a),
6  service was complete on June 25, 2008.

7  Having reviewed the record, the court concludes that plaintiff complied with the requirements
8  of § 415.20(a).[43]  See, e.g., *Loans v. Jolly*, No. 2:07-CV-13143, 2007 WL 4547864, *1-2 (E.D. Mich.
9  Dec. 19, 2007) (granting plaintiff's *ex parte* application for an extension of time to serve and approving
10  plaintiff's proposal to serve defendant at the address confirmed by a USPS "Request for Change of

---

[39]Plaintiff's Opp. at 3; McCarthy Decl., ¶ 10; *id.*, Exh. 6 (copy of Proof of Service on defendant ATC and Notice of Errata, Docket Nos. 13 and 14).

[40]Plaintiff's Opp. at 3.  Plaintiff asserts that the woman is "Violet Lee," who was listed as an ATC account manager in a 2007 tire industry directory. (*Id.*; see also McCarthy Decl., ¶ 11 ("Attached hereto as Exhibit 7 is a true and correct copy of an online directory of private tire marketers, from Goliath Tire Business (May 2007), available at http://goliath.ecnext.com/coms2/summary_0199-6518817_ITM, last visited on January 27, 2009); *id.*, Exh. 7 (printout of Goliath directory listing one "Violet Lee" as an account manager for ATC).)  Plaintiff provides no information on how Goliath compiles its directory.

[41]Plaintiff argues that its review of the New Jersey Secretary of State Corporate Records database "shows no entry for American Tire Corporation," and states that, though defendants' counsel has represented that defendants have shown her papers indicating that ATC is a New Jersey corporation, she has not provided a copy of these papers to plaintiff's counsel. (Plaintiff's Opp. at 8 n. 2.)

[42]Defendants' Motion at 4.

[43]Although the summons and complaint that had been mailed were returned to plaintiff on September 22, 2008, it is not clear whether they were returned by the post office or by defendants. (See McCarthy Decl., Exh. 15 (copy of Plaintiff American Tire Distributors, Inc.'s Notice of Status of Service of Papers on Defendants ("Notice of Status"), Docket No. 40 (Oct. 3, 2008) at 2).)  Service need only be "reasonably calculated" to provide actual notice of the pendency of the action, however. See, e.g., *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 318 (1950) (evaluating whether notice was "reasonably calculated to reach the interested parties").  Plaintiff served ATC by substituted service, as permitted by California Code of Civil Procedure § 415.20(a), at its address of record.  Whether ATC received actual notice of the action is therefore not dispositive in determining whether service was proper.  The return of the mailed copies more than three months later does not change the court's conclusion that plaintiff properly served ATC.

9

Address or Boxholder Information" form). Consequently, the default entered against ATC is not void due to invalid service of process.

Turning to the validity of attempted service on Hengyucius, plaintiff attempted to serve the summons and complaint on Hengyucius personally at the El Monte address – i.e., the then-current address for the company of which he is president.[44] Plaintiff's process server made three attempts at personal service: (1) at 3:10 p.m. on Tuesday, July 8, 2008; (2) at 2:44 p.m. on Wednesday, July 9, 2008, and (3) at 10:15 a.m. on Thursday, July 10, 2008.[45] Thereafter, plaintiff served the summons and complaint by substituted service on Hengyucius at the El Monte address, at 4:14 p.m. on Thursday, July 10, 2008.[46] The papers were delivered to a woman who identified herself as "Julie" and who plaintiff asserts was a secretary.[47] They were also mailed to Hengyucius at the El Monte address. Plaintiff contends that under Code of Civil Procedure § 415.20(b), service was complete on July 28, 2008.

Once again, the court agrees. As explained, § 415.20(b) permits substituted service on an individual defendant after reasonably diligent efforts to effect personal delivery at a proper place are made. One of the "proper places" at which an individual can be served is his "usual place of business." CAL. CODE CIV. PROC. § 415.20(b). The evidence in the record establishes that plaintiff complied with this prerequisite for substituted service. Consequently, the default entered against Hengyucius is not void due to invalid service of process.

**C.   Legal Standard Governing Set Aside of Default for Good Cause**

Although the court has concluded that defendants' defaults are not void for invalid service of process, it may nonetheless set aside the defaults if there is good cause to do so. Rule 55(c) of the Federal Rules of Civil Procedure governs the vacating of a party's default. It provides:

"For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."

---

[44] McCarthy Decl., Exh. 8 (Proof of Service; Affidavit of Reasonable Diligence, Docket No. 19).

[45] *Id.*

[46] *Id.*

[47] Plaintiff's Opp. at 3.

10

1       FED.R.CIV.PROC. 55(c).

"The 'good cause' standard that governs vacating an entry of default under Rule 55(c) is the same standard that governs vacating a default judgment under Rule 60(b)." *Franchise Holding II, LLC. v. Huntington Restaurants Group, Inc*., 375 F.3d 922, 925 (9th Cir. 2004) (citing *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001)). Thus, in applying Rule 55(c), the court must consider three factors: "(1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the default." See *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) (listing factors that govern setting aside a default judgment). The burden is on the defendant to show that relief from entry of default is justified. See *TCI Group Life Ins. Plan*, 244 F.3d at 695 ("As is true with respect to any Rule 60(b) motion and with respect to a defaulting party invoking Rule 55(c), the party seeking to vacate a default judgment bears the burden of demonstrating that these factors favor vacating the judgment," citing *Cassidy v. Tenorio*, 856 F.2d 1412, 1415 (9th Cir. 1988)). The factors are disjunctive, however, and the court is therefore "free to deny the motion 'if any of the three factors [is] true.'" *Franchise Holding II*, 375 F.3d at 926 (quoting *American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1108 (9th Cir. 2000)).

      The court has broad discretion when deciding a motion to set aside the entry of default under Rule 55(c). See *Mendoza v. Wright Vineyard Mgmt.*, 783 F.2d 941, 945 (9th Cir. 1986) ("The court's discretion is especially broad where . . . it is entry of default that is being set aside, rather than a default judgment"); see also *United States v. Brady*, 211 F.3d 499, 504 (9th Cir. 2000) (stating "that a district court's discretion is 'especially broad' when . . . 'it is entry of default that is being set aside, rather than a default judgment,'" quoting *O'Connor v. Nevada*, 27 F.3d 357, 364 (9th Cir. 1994)); *Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986) ("The different treatment of default entry and judgment by Rule 55(c) frees a court considering a motion to set aside a default entry from the restraint of Rule 60(b) and entrusts [the] determination to the discretion of the court"); *McManus v. Am. States Ins. Co.*, 201 F.R.D. 493, 500 (C.D. Cal. 2000) ("The 'good cause' standard for setting aside an entry of default . . . is slightly more favorable to the party in default," citing *Hawaii Carpenters' Trust Funds*, 794 F.2d at 513). In addition, the Ninth Circuit has expressed a preference for adjudicating cases on their merits. See *Clark v. State Farm Mut. Auto. Ins. Co.*, No. CV04-10223ABC (CWx), 2005

11

1  WL 1124730, *1 (C.D. Cal. May 6, 2005) ("Cases should be decided upon their merits whenever
2  reasonably possible," quoting *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986)).

3  **D.  Whether Good Cause Warrants Setting Aside the Entry of Defendants' Defaults**

4  Because no default judgment has been entered in this case, the court applies the "good cause"
5  standard of Rule 55(c). Consistent with the decisions cited above, however, it will evaluate whether
6  good cause has been shown by assessing: (1) the prejudice plaintiff will suffer if defendants' defaults
7  are set aside; (2) whether defendants have meritorious defenses available to them; and (3) whether
8  defendants' culpable conduct contributed to the defaults. As noted, "'[t]his tripartite test is disjunctive,'
9  meaning that only one of these factors need be present to justify denial." *Valvanis v. Milgroom*, Civ
10  06-144 JMS KSC, 2008 WL 538667, *2 (D. Haw. Feb. 28, 2008) (quoting *Cassidy*, 856 F.2d at 1415).

11  **1.  Whether Plaintiff Will Be Prejudiced**

12  The standard for determining whether a plaintiff will be prejudiced if a defendant's default is
13  set aside is whether its ability to pursue its claim will be hindered. *Falk*, 739 F.2d at 463; *Gross v.*
14  *Stereo Component Systems, Inc.*, 700 F.2d 120, 123 (3d Cir. 1983). Delay alone does not constitute
15  prejudice unless it will "result in the loss of evidence, create increased difficulties of discovery, or
16  provide greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)
17  (quoting 10 C. Wright, A. Miller and M. Kane, FEDERAL PRACTICE AND PROCEDURE, § 2699, pp. 536-
18  37 (1983)); see also *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir. 1990) ("It is true that the plaintiff
19  will suffer some delay in his recovery if a trial on the merits is held, but 'delay alone is not a sufficient
20  basis for establishing prejudice'"); *Ferrand v. Wisconsin Equine Mgmt. Servs., Inc*., No. C 94-1059 SC,
21  1995 WL 274366 , *3 (N.D. Cal. May 5, 1995) ("a motion to set aside default will be denied if plaintiff
22  can show prejudice, such as the delay will result in loss of evidence, increase the difficulty of discovery,
23  or thwart plaintiff's ability to obtain relief"). Plaintiff does not assert that its ability to pursue its claim
24  will be hindered if defendants' defaults are set aside.[48] Accordingly, this factor supports granting

---

[48]Plaintiff does complain about defendants' non-cooperation and delay. As noted, however, delay alone is not sufficient to establish prejudice. See also, e.g., *Northwestern Mut. Life Ins. Co. v. DeMalleray*, 789 F.Supp. 651, 654 (S.D.N.Y. 1992) ("To establish prejudice, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion," citing *Davis*, 713 F.2d at 916); see also *Cutting v. Town of*

12

defendants' motion.

## 2. Whether Defendants Have a Meritorious Defense

In evaluating whether a defaulted party has a meritorious defense, the court must ask "whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *Hawaii Carpenters' Trust Funds*, 794 F.2d at 513. "A meritorious defense is not necessarily one which must, beyond a doubt, succeed in defeating a default judgment, but rather one which at least *raises a serious question* regarding the propriety of a default judgment and which is supported by a developed legal and factual basis." *Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994) (emphasis added); see also *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984) ("a meritorious defense is presumptively established when the 'allegations of defendant's answer, if established on trial[,] would constitute a complete defense to the action,'" quoting *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)); *Breuer Electric Mfg. Co. v. Toronado Systems of America, Inc.*, 687 F.2d 182, 186 (7th Cir. 1982) ("defendants gave not the slightest indication of any specific defense on the merits. They merely tendered a general denial which asserts that they are not liable to plaintiff. The showing of a meritorious defense that is necessary to set aside a default requires more than the bare legal conclusions set forth in defendants' proposed answer").

To succeed on its federal trademark infringement and unfair competition claims, plaintiff must establish: (1) that it has a valid, protectable trademark, and (2) that ATC's use of the mark is likely to cause confusion. See, e.g., *Applied Information Sciences Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007) (citing *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1047, 1053 (9th Cir. 1999)). Defendants contend that plaintiff's claims are meritless because ATC is a tire manufacturer, whereas plaintiff is a tire distributor.[49] Defendants represent that ATC manufactures

---

*Allenstown*, 936 F.2d 18, 22 (1st Cir. 1991) ("if 'the court sets aside the default judgment there is no conceivable way that the plaintiff's estate and Martha Cutting could prove their case'[;] . . . 'the timing of the motion is of insurmountable prejudice to the plaintiffs in this action'"); *Ferrand*, 1995 WL 274366 at *3 ("a motion to set aside default will be denied if plaintiff can show prejudice, such as the delay will result in loss of evidence, increase the difficulty of discovery, or thwart plaintiff's ability to obtain relief").

[49]Defendants' Motion at 4.

13

1   only OTR tires, each of which weighs more than 10,000 pounds, and further state that ATC makes "its
2   own brand of tires under the trademark of 'Colorado' tires."[50]  In contrast, defendants assert, plaintiff
3   sells various brands "of smaller tires designed for passenger cars, SUVs and container-hauling trucks,"
4   which weigh less than 200 pounds.[51]  Consequently, defendants argue, the "targeted customers are
5   totally different," and no purchaser will be confused by any similarity between plaintiff's and ATC's
6   names.[52]

7   This argument overlooks the fact that American Tire Distributors' products include OTR tires,
8   not just smaller tires designed for passenger or commercial vehicles.  It thus appears that plaintiff and
9   defendants are direct competitors in the OTR market.  Even if they were not, however, the fact that the
10  companies both sell products in the tire industry is sufficient to establish a likelihood of confusion, given
11  the virtually identical nature of their names and the fact that both maintain and promote their products
12  over the Internet.  See *Brookfield Communications*, 174 F.3d at 1055-57 (holding that an entertainment
13  industry information provider that owned and used the trademark "MovieBuff" in connection with the
14  sale of software applications had established that a video rental store chain's use of the domain name
15  moviebuff.com would likely create consumer confusion because the marks were essentially identical
16  and both companies used the Internet to market their products, and rejecting the district court's analysis
17  because it "overemphasized[] differences in principal lines of business, [given] . . . that 'the relatedness
18  of each company's prime directive isn't relevant.' . . . Instead, the focus is on whether the consuming
19  public is likely somehow to associate West Coast's products with Brookfield. . . . Here, both companies
20  offer products and services relating to the entertainment industry generally, and their principal lines of
21  business both relate to movies specifically. . .").

22  Moreover, plaintiff represents that defendants have disseminated information – including email
23  solicitations signed by "Johnson," which is the surname of *plaintiff's* CEO, as well as various documents

---

[50]*Id.*

[51]*Id.* at 5.

[52]*Id.*

14

styled "press releases" – to tire industry trade publications.[53] Defendants do not deny these assertions. In view of these facts, the court concludes that defendants have failed to raise a "serious question" regarding the propriety of the defaults entered against them. This factor, therefore, supports denying defendants' motion.

### 3. Whether Defendants' Conduct Was Culpable

A defendant's conduct is culpable if it received actual or constructive notice of the action and intentionally failed to answer or otherwise respond. *TCI Group Life Ins. Plan*, 244 F.3d at 697-98; *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987). A defendant "intentionally" fails to respond when its conduct is "willful, deliberate or [in] bad faith." *TCI Group Life Ins. Plan*, 244 F.3d at 697 (quoting *American Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996)).

The record before the court is replete with evidence of defendants' culpable conduct. Despite serving defendants at ATC's then-current address (the address on file with the USPS) in June, plaintiff received no response for months. Then, in September, some three months after service, the papers mailed to defendants at the El Monte address were returned to plaintiff without explanation.[54] Additionally, the proofs of service on file indicate that plaintiff personally served ATC and Hengyucius with all papers associated with this action on October 6, 2008.[55] Plaintiff asserts that, on October 16, 2008, it received a phone message from Maria Tam, counsel for defendants.[56] Although plaintiff's

---

[53] See *supra* note 14 and accompanying text.

[54] Plaintiff indicates one possible reason for the returned documents. In its opposition, it asserts that, in late September, "a reporter for a tire industry publication questioned Defendant Hengyucius about this action and [he] advised the reporter that he had not been served with papers." (Plaintiff's Opp. at 4; McCarthy Decl., ¶ 15.) Plaintiff alleges, without elaboration, that the reporter gave Hengyucius copies of the papers. (McCarthy Decl., ¶ 15.) Thereafter, on September 22, 2008, Hengyucius allegedly sent an email to a trade publication reporter. (McCarthy Decl., ¶ 18.) Styled a "press release," the email purportedly acknowledged that plaintiff had initiated suit against defendants and stated ATC's intent to take legal action against plaintiff, as well as its intent to report the case to the U.S. Congress. (McCarthy Decl., Exh. 11 (copy of alleged email).)

[55] See Proof of Service on Abraham Hengyucius, Docket No. 43 (Oct. 14, 2008); Proof of Service on American Tire Corporation, Docket No. 44 (Oct. 14, 2008). The papers were served on Hengyucius at 13872 Magnolia Ave., Chino, CA 91710.

[56] Plaintiff's Opp. at 4.

attorney returned the call on October 17 and wrote to Tam on October 27, Tam did not respond until November 6.[57] At that time, she asked if plaintiff would consider withdrawing its motion for default judgment. Because she provided no reason for it to do so, plaintiff declined on November 7; it also inquired, however, about the possibility of settlement negotiations.[58] Thereafter, *ten full weeks* passed before defendants filed a motion to set aside their defaults.[59]

Defendants do not dispute this account. Rather, they make a feeble argument that it took some time to prepare a response to plaintiff's papers.[60] Their contentions are unconvincing. In light of the fact that defendants waited months before taking any action in this case, the court concludes that they intentionally failed to respond and therefore that their conduct is culpable. This factor, too, supports denying defendants' motion.

### 4. Whether Balancing the Factors Favors Setting Aside Defendants' Default

As discussed, defendants' proffered defense fails to raise a serious question as to the propriety of default. Defendants, moreover, offer no credible explanation for their failure to respond once served. Although the prejudice factor weighs in favor of setting aside the default, the court declines to do so in light of defendants' culpable conduct and lack of meritorious defense. Accordingly, the court denies defendants' motion to set aside their default. See *Franchise Holding II, LLC*, 375 F.3d at 926 (observing that the three Rule 60(b) factors are disjunctive and that the court is therefore "free to deny the motion 'if any of the three factors [is] true'"); see also *Mood v. Global Diamond Resources, Inc.*, 125 Fed. Appx. 113, 114 (9th Cir. Feb. 17, 2005) (Unpub. Disp.) ("The District Court properly exercised its discretion by applying the correct 'good cause' standard for setting aside an entry of default under

---

[57]*Id.*

[58]*Id.*

[59]*Id.* at 5. Plaintiff's counsel further represents that, prior to filing this motion, defendants failed to meet and confer with plaintiff as is *required* under Local Rule 7-3. (*Id.*)

[60]See, e.g., Defendants' Reply, Hengyucius Decl., ¶ 5 ("Around October 2008, I was provided with a copy of the complaint and summons for this case. I then retained Maria W. Tam to find out more about this lawsuit. We also did research and investigation to find out more about plaintiff's trademark and the type of business that plaintiff is in. It took us sometime [sic] to find out all the necessary information regarding the products sold, the mark, [and] the channels of trade of plaintiff").

16

Rule 55(c). The District Court considered whether GDRI engaged in culpable conduct that led to the default, and whether reopening the default entry would prejudice the plaintiff. Although the District Court did not consider whether GDRI had any meritorious defenses, we have held that the '[good cause] factors are disjunctive,' and, therefore, 'the district court was free to deny the motion if any of the three factors was true,'" citing *Franchise Holdings II, LLC*, 375 F.3d at 926); *American Ass'n of Naturopathic Physicians*, 227 F.3d at 1108 ("'[t]his tripartite test is disjunctive,' meaning that the district court would be free to deny the motion if any of the three factors was true," quoting *In re Hammer*, 940 F.2d 524, 526 (9th Cir. 1991)).

### III. CONCLUSION

For the reasons stated, the court denies defendants' motion to set aside their defaults.

DATED: March 2, 2009

_Margaret M. Morrow_
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE